IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2010

**STATE OF TENNESSEE v. DON SIDDALL**

**Appeal from the Hamilton County Criminal Court**
**No. 267654      Don W. Poole, Judge**

**No. E2009-02348-CCA-R3-CD - Filed December 22, 2010**

The Defendant, Don Siddall, was found guilty in a bench trial by the Hamilton County Criminal Court of two counts of false imprisonment, a Class A misdemeanor. See T.C.A. § 39-13-302 (2010). He was sentenced to eleven months, twenty-nine days' confinement, suspended after time served. On appeal, he contends that (1) the evidence was insufficient to support his convictions and (2) the trial court erred by allowing the victims to be exempt from the rule of sequestration. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Mikel Dixon, Knoxville, Tennessee, for the appellant, Don Siddall.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Bill Cox, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the efforts of the Defendant to hitchhike and his entry into the victims' car. Christina Capetz testified that the Defendant jumped in front of her car as she drove to church with her three children. She said that it was around 6:00 p.m. and dark when she encountered the Defendant and that she had to slam on her brakes to avoid hitting him. She said she had never met the Defendant. She said the Defendant entered the back of her car without permission and told her and her children that he needed a ride to the Krystal restaurant. She said she attempted to lock the doors before the Defendant entered the car but accidentally unlocked them. She said that she asked the Defendant to leave but that he

repeatedly told them, "If you take me to Krystal's, nobody will be hurt." She said that she was scared and that she could not leave her car without her children. She said although she had a cellular telephone, she did not attempt to call the police.

Ms. Capetz testified that the Defendant rode in the back seat with her two younger children, one of whom was less than eighteen months old and strapped into a car seat. She said the Defendant offered her children candy, informed them that he was a doctor, and gave them his name and telephone number. She said the drive to the Krystal took ten minutes. She said the Defendant left her car when they arrived and walked toward a car in the parking lot. She did not recall if the Defendant told her that his car had broken down. She said she drove to her church and called 9-1-1. She said that the police came to the church and that she identified the Defendant from a photograph lineup.

The recorded 9-1-1 call was played. On the recording, Ms. Capetz stated that she arrived at church and discussed the incident with her pastor. She told the 9-1-1 operator, "I didn't really realize I got carjacked until [my pastor] said . . . 'you just got carjacked.'" She said that the Defendant jumped in front of her car and that her daughter rolled down the window. She said the Defendant showed them a doctor's badge and his identification and told them that he needed a ride to the Krystal and that it was important. She said the Defendant then entered her car. She said she told the Defendant that she would not drive him anywhere and that she would punch him in the face. She said the Defendant gave her his name and telephone number and told her he was meeting someone at the Krystal. She said the Defendant searched in his bag for something but stopped and removed his hand from the bag when asked to do so by her son. She said that she drove the Defendant to the Krystal and that he left her car when they arrived. She said the Defendant asked her to pray for him because something big was going to happen in Atlanta. She said the Defendant also informed her that she could call him if she ever had a medical emergency or needed prescriptions filled. The 9-1-1 operator asked Ms. Capetz if she wanted to file a police report and Ms. Capetz responded by asking if the operator recommended that a report be filed. Ms. Capetz told the 9-1-1 operator that the incident happened quickly and that although she did not realize it at the time, she believed she was carjacked. She said she prayed that the Defendant would not hurt her or her children. She said the Defendant did not show her a weapon. When asked if the Defendant was violent or aggressive, she responded, "No, not at all . . . he was very calm."

On cross-examination, Ms. Capetz testified that the Defendant jumped in front of her car and that her daughter rolled down the front window on the passenger side. She said the Defendant spoke to her through the open window, but she could not recall what he said before entering her car. She did not remember if the Defendant asked her where she was going, but she said she told the Defendant she was on her way to church. Although she

admitted that her church was located about a mile from the Krystal on Shallowford Road, she said she normally drove to church along a different route and did not pass the Krystal. She said the Defendant entered her car, demanded a ride to the Krystal, and told them that they would not be hurt "as long as we brought him where he needed to go." Ms. Capetz said she felt threatened by the Defendant. She said she dialed 9-1-1 on her telephone but did not complete the call. She said that she did not know if the Defendant had any weapons but that he carried a small bag. She admitted the Defendant provided her with his name and telephone number. She did not remember the Defendant's telling her that he wanted to show her his address on a piece of mail in his bag. She said that the Defendant offered her children candy but that he did not give them any at her request. She said the Defendant did not touch her or her children during the ride. She said that the Defendant left her car when they arrived at the Krystal and that he pointed to the person he was meeting. She said that the Defendant spoke to her as he left her car but that she did not remember if he thanked her for the ride. She said the Defendant left in a gold car.

Ms. Capetz's son, ten years old at the time of the trial, testified that the Defendant jumped in front of their car and that his mother slammed on the brakes to avoid hitting the Defendant. He said the Defendant took out a badge, told them he was a doctor, and said he would not hurt them. He said his mother spoke to the Defendant and accidentally unlocked the car doors. He said the Defendant entered the back of the car and repeatedly said, "Drive us to Krystal's and nobody will get hurt." He said that they did not invite the Defendant into the car and that the Defendant scared him. He said the Defendant offered mints and cookies to his baby brother. He said that the Defendant removed mail from his bag and that he thought he saw something black in the bag that looked like a gun. He said the Defendant left the car when they arrived at the Krystal.

On cross-examination, he testified that the Defendant spoke to his mother through the driver's side window before entering the car. He did not remember what his mother said to the Defendant. He said that the Defendant gave them his name and telephone number and that the Defendant told them to pray for him because something "bad" was happening in Atlanta. He said the Defendant may have thanked his mother for the ride. He denied that his mother told him what to say while testifying.

Ms. Capetz's daughter, fourteen years old at the time of the trial, testified that the Defendant jumped in front of their car and that her mother slammed on the brakes to avoid hitting the Defendant. She said the Defendant walked up to her window and asked for a ride to the Krystal. She said she could not remember if she rolled down her window or if it was already down. She said that although they told the Defendant they would not give him a ride, he ran around the front of the car and entered the back. She said the Defendant repeatedly told them, "Take me to Krystal's and nobody will get hurt." She said that they did not invite

the Defendant into their car and that she was afraid of the Defendant because he was a stranger. She said the Defendant sat in the back seat behind her mother and next to her baby brother. She said the Defendant told them he was a doctor and provided his name and telephone number. She said that the Defendant had a plastic shopping bag with him and that he told them he had mail in the bag. She said the Defendant offered to give a mint to her baby brother. She said that the Defendant left the car when they arrived at the Krystal and that he told them to pray for him because something bad was going to happen in Atlanta.

On cross-examination, she testified that she had not spoken with anyone before the trial regarding her testimony. She said her testimony was based on her own opinions and was not influenced by the testimony of the other victims. She said that her mother told the Defendant she would not give him a ride and that her mother accidentally unlocked the doors while attempting to lock them. She said the Defendant told them that his car broke down and that he was going to the Krystal to meet a friend who could help him get parts for his car. She did not remember if the Defendant told them he knew members of their church. She said the Defendant did not thank them for the ride.

The Defendant testified that he was sixty-six years old, five-feet, seven-inches tall, and weighed 120 pounds. He said he was the same size when he encountered the victims. He said Ms. Capetz and her daughter were bigger than he was and that he thought the daughter was an adult. He said that his car broke down and that he arranged to meet a friend, Joyce Clark, at the Krystal because construction and rush-hour traffic caused long delays near his home. He arranged for another friend, George Acres, to drive him to a service station near the I-75 interchange where he met the victims. He said he asked for a ride to the service station, instead of to the Krystal, because he did not want to inconvenience Mr. Acres, who was elderly, had trouble driving at night, and never missed a 6:30 p.m. newscast.

The Defendant testified that whenever he needed a ride, he would go to the service station and ask if anyone was driving in the direction he needed to go. He said he spoke with drivers in two cars but was unable to obtain a ride. He said he had a small Hallmark bag that contained cards and mail. He said that he used the bag to flag down the victims' car and that he did not jump in front of the victims' car. He said the car stopped and someone rolled down the passenger's side window. He said he informed Ms. Capetz that his car broke down and asked if she was driving toward the interstate exit near the Krystal restaurant. He said she responded that she was driving that direction and that he could sit in the back if he was willing to "put up with" the cramped back seat. He said he walked around the rear of the car and got in.

The Defendant testified that he felt uneasy when he entered the car and realized that he was in a car with a mother and her children. He said he attempted to make friendly

conversation by offering mints to the children, asking them if they lived in Ooltewah, and informing them that he was a medical doctor who lived in Ooltewah. He said he offered to provide medical services if they were ever sick and unable to reach their family doctor. He said that he gave them his name and telephone number to ease their minds and that he attempted to show them his mailing address by removing a piece of mail from his bag. He said Ms. Capetz mentioned they were going to Grace Baptist Church. He said he told them that their generosity toward him was not a surprise because Grace Baptist was a church of generosity. He said he told them he knew the church well because his father was honored there during a Christmas concert for being the oldest person in attendance. He said he thanked Ms. Capetz for the ride when they arrived at the Krystal. He said he asked them to pray for him and his ability to fix his car quickly with parts that were being shipped from Atlanta. He said he left with Ms. Clark.

The Defendant testified that he did not threaten the victims or demand a ride to the Krystal. He said Ms. Capetz never told him she did not want to give him a ride. He said he would have left the car if asked to do so. He said he had a pleasant ride with the victims and acted as a gentleman throughout the ride. He said the victims did not indicate that he was unwelcome.

On cross-examination, the Defendant testified that he was forced to retire from the practice of medicine after he pled guilty to illegal possession of prescription medication. He agreed that his first two attempts to obtain a ride to Krystal failed. The Defendant said that although Ms. Capetz offered to give him a ride, he did not dispute that she had second thoughts about giving him a ride after he was in the car. He said Ms. Capetz did not ask him to get out of the car or tell him she would not give him a ride. He said he never stood in front of her car. He said Ms. Capetz's statements to the police were false. He agreed that Ms. Capetz and her children made false statements in court.

George H. Acres testified that he was a retired professor of religion and a friend of the Defendant. He said that he was "addicted" to the news and that he did not like to miss the 6:30 p.m. newscast. He said the Defendant asked for a ride to the service station, instead of to the Krystal, to prevent him from missing the news. He said that he offered to give the Defendant a ride to the auto parts store but that the Defendant declined and said he would be able to find a ride. He said he had taken the Defendant to the service station twice in the past to allow the Defendant to search for rides. On cross-examination, Mr. Acres admitted that he did not see the Defendant interact with the victims.

Joyce Clark testified that she knew the Defendant and that she agreed to give him a ride to purchase auto parts for his car. She said they arranged to meet at the Krystal because the Defendant did not want to inconvenience her by making her wait in heavy traffic near his

home. She said she knew the Defendant was being dropped off near the I-75 intersection, where he would attempt to find a ride to the Krystal. She said the Defendant had received rides near that intersection in the past. She said that she had taken the Defendant to the intersection previously and that she has seen him approach a car and receive a ride. She said the Defendant briefly spoke with Ms. Capetz after arriving at the Krystal and then walked to her car. She said he was carrying a small Hallmark bag and identified an exhibit as the same bag. She said that the Defendant entered her car and that they spoke for a few minutes before leaving for the auto parts store.

On cross-examination, Ms. Clark testified that she agreed to meet the Defendant at the Krystal because it was near the interstate. She did not know the victims or how the Defendant obtained the ride. She also did not know if the Defendant had something occurring in Atlanta the weekend after he encountered the victims.

Upon the foregoing proof, the court found the Defendant guilty of two counts of false imprisonment. The court found that the Defendant was not credible, stating, "I think common sense dictates against what Mr. Siddall says . . . I think he [was] . . . upset because he didn't have a ride . . . and I think he made statements to these people that did put them in fear." He was sentenced to eleven months, twenty-nine days' confinement, suspended after time served. This appeal followed.

**I**

The Defendant contends that the evidence was insufficient to support his convictions because it did not establish that he knowingly confined the victims. The State contends that the evidence was sufficient to support the Defendant's convictions. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence but must presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A person commits the offense of false imprisonment who "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a). A person acts "knowingly" with respect to the result of his conduct when

he is aware that his conduct is reasonably certain to cause the result. T.C.A. § 39-11-106(a)(20) (2010).

Taken in the light most favorable to the State, the evidence reflects that the Defendant jumped in front of the victims' car and asked for a ride to the Krystal. The Defendant entered the car without permission and said to take him to Krystal and nobody would get hurt. Ms. Capetz testified that although she asked the Defendant to leave, he remained in the car. She said she was scared and unable to leave her car without her three young children. She also said she had to alter her route to meet the Defendant's demands.

We conclude that a rational trier of fact could find the elements of false imprisonment beyond a reasonable doubt. The evidence is sufficient to support the Defendant's convictions.

## II

The Defendant argues that the trial court erred by allowing the victims to be exempt from the rule of sequestration. See Tenn. R. Evid. 615. The State argues that the Defendant has waived this issue and that the trial court did not err by allowing the victims to remain in the courtroom. We agree with the State that the Defendant has waived this issue.

At the trial, defense counsel asked the court to apply Rule 615 but stated, "I don't know if, since they each have a charge, if [the victims are] allowed to stay." The trial court ruled that Ms. Capetz, her daughter, and her son would be exempt from the rule of sequestration because they were all victims and were entitled to stay in the courtroom. Defense counsel agreed that the victims were entitled to stay and requested the court to sequester any additional witnesses. The Defendant did not allege at the trial that the victims' presence violated Rule 615, did not object to any of the victims' testimony except for a single hearsay objection, and did not request a hearing to determine whether a violation of Rule 615 occurred or caused him prejudice. As a result, we hold that the Defendant has waived this issue. See T.R.A.P. 36(a) (Relief need not be granted to "a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); see also State v. Jimmy Dale Picket, No. M2005-02434-CCA-R3-CD, Franklin County, slip. op. at 5 (Tenn. Crim. App. Feb. 14, 2007) (stating that although the appellant invoked Rule 615 at the start of the trial, he waived any violation of that rule on appeal because he "never alleged at trial that the witnesses violated the Rule, never objected to any of the witnesses' testimony, and never requested a jury-out hearing to determine the facts of the violation or prejudice to the appellant.").

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE